UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUNIOR COLLINS,


                              Plaintiff,

                                                    DECISION AND ORDER

                                                    10-CV-6350L

            v.

LIEUTENANT FERGUSON,
CORRECTIONAL OFFICER CORDWAY
CORRECTION OFFICER WILLIAMS
BRIAN FISHER, Commissioner DOC,



                              Defendants.
_____


        Plaintiff, Junior Collins, appearing *pro se*, commenced this action under 42 U.S.C. § 1983.

Plaintiff, an inmate in the custody of the New York State Department of Correctional Services

("DOCS"), alleges that his constitutional rights have been violated in a number of respects in

connection with certain incidents that occurred in 2008 and 2009, while plaintiff was confined at

Five Points Correctional Facility.  Plaintiff has sued four defendants, each of whom was a DOCS

employee at the time of the relevant events.  All of the defendants have moved to dismiss the claims

against them, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.



                              **BACKGROUND**


        Plaintiff alleges the following facts, which are accepted as true for purposes of defendants'

motion.  On October 5, 2008, plaintiff was placed in administrative keeplock for violation of a

DOCS rule.  Complaint ¶ 9.  On October 14, 2008, plaintiff was found guilty of violating that rule, and was sentenced to twelve months' confinement in the Special Housing Unit ("SHU") and loss of certain privileges and good time.  Complaint ¶ 10.

On December 18, 2008, plaintiff's SHU sentence was modified from twelve to six months. Complaint ¶ 11 and Ex. A.  On October 15, 2009, plaintiff was advised by the director of the DOCS Special Housing/Inmate Disciplinary Program (who is not a defendant) that his "superintendent's hearing ... ha[d] been reviewed and adminstratively reversed ... ."  Complaint ¶ 11 and Ex. B.

In his complaint, plaintiff alleges that defendant Correction Officer ("C.O.") Cordway violated plaintiff's constitutional rights by Cordway's "false disciplinary infraction and placement of plaintiff in administrative keeplock."  Complaint ¶ 12.  He also alleges that defendant Lieutenant Ferguson "violated plaintiff's rights under due process clause by being biased and partial throughout plaintiff's hearing, denying plaintiff [sic] right to assistance, denying plaintiff the right to fully cross-examine his adverse witnessed, [sic] his placement of plaintiff in administrative keeplock and special housing unit."  Complaint ¶ 13.

Plaintiff further alleges that defendant C.O. Williams testified at his disciplinary hearing and "ended up testifying to more lies than Officer Cordway ... ."  Complaint ¶ 20.  Finally, he alleges that defendant DOCS Commissioner Brian Fischer was personally involved in the alleged deprivations of plaintiff's rights by virtue of his failure to remedy the constitutional violations.  Complaint ¶ 22.

Plaintiff alleges that he "was placed in unsanitary cells with dried feces all over the cell's walls and remained without his meals for more than 24 hours," although he attributes this to a "State Official unknown to plaintiff."  He further alleges that he "was denied his right to medical attention for his prostate medical condition even though plaintiff requested medical attention from State Officials," and that he "was also denied regular access to his medication by State Officials unknown to plaintiff."  Complaint ¶ 15.

Plaintiff alleges that defendants' actions denied him his constitutional rights to due process and to be free from cruel and unusual punishment.  He seeks damages in the total amount of $507,000.  Complaint at 8.

## DISCUSSION

### I. Claims against Defendants in their Official Capacities

Plaintiff has indicated in the complaint that he is suing defendants in both their individual and official capacities.  *See* Complaint ¶ 3 and at 8.  The law is well established, however, that claims for damages against state employees in their official capacities are deemed to be claims against the state itself, and are barred by the Eleventh Amendment to the United States Constitution.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Dube v. State Univ. of New York*, 900 F.2d 587, 594–95 (2d Cir. 1990); *Colon v. Zydell*, 635 F.Supp.2d 264, 267 (W.D.N.Y. 2009).  Since plaintiff seeks only monetary relief, his claims against defendants in their official capacities are dismissed.

### II. Eighth Amendment Claims

Plaintiff's Eighth Amendment claims are based on the conditions of his confinement in SHU, and the alleged denial of medical treatment while he was in SHU.  By plaintiff's own admission, however, he does not know who was responsible for those alleged violations of his rights.  Since there are no allegations that these defendants were responsible for those matters, this claim must be dismissed.  *See Randolph v. Simmons*, 757 F.Supp.2d 233, 237 (W.D.N.Y. 2010) (dismissing prisoner's Eighth Amendment claim on ground that, even if conditions of prisoner's confinement were unusually harsh, there was "no indication that either defendant had any personal involvement with respect to those conditions").

### III. Due Process Claims

### A. Claim against Defendant Cordway

Plaintiff alleges that he "was denied his rights by the State Official C.O. Cordway by [Cordway's] false disciplinary infraction and placement of plaintiff in administrative keeplock." Complaint ¶ 12. He also alleges that "Cordway did not perform the test on Plaintiff's urine sample in compliance with" state regulations, and that "in an attempt to cover up his negligence he lied on several occasions" during plaintiff's hearing. Complaint ¶ 19.

A state official's failure to comply with state law or regulations does not in itself give rise to a federal constitutional claim. *See Eleby v. Selksy*, 682 F.Supp.2d 289, 293 (W.D.N.Y. 2010) ("even if plaintiff could show a deviation from procedures called for under state law or DOCS regulations ... , '[f]ederal constitutional standards rather than state law define the requirements of procedural due process'") (quoting *Shell v. Brzezniak*, 365 F.Supp.2d 362, 376 (W.D.N.Y. 2005)). Plaintiff has not articulated how Cordway's alleged failure to comply with state regulations when testing plaintiff's urine sample violated his federal rights. *See Cole v. Fischer*, No. 07 Civ. 11096, 2009 WL 130186, at *4 (S.D.N.Y. Jan. 15, 2009) ("With regard to Cole's claim that Halicki failed to follow correctional facility rules on conducting a urinalysis, Cole does not explain how Halicki failed to follow urinalysis procedures, nor does he reveal the results of any urinalysis conducted by Halicki or explain how Halicki's actions prejudiced or subjected Cole to the loss of any rights, privileges or immunities secured by the laws or Constitution of the United States").

In addition, a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). *See also Crenshaw v. Hartman*, 681 F.Supp.2d 412, 415 (W.D.N.Y. 2010) ("The law is clear that 'the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process'") (quoting *Sital v. Burgio*, 592 F.Supp.2d 355, 357 (W.D.N.Y. 2009)).

"Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as 'retaliation against the prisoner for exercising a constitutional right.'" *Cusamano v. Sobek*, 604 F.Supp.2d 416, 471-72 (N.D.N.Y. 2009) (quoting *Boddie*, 105 F.3d at 862). In accordance with those principles, courts have dismissed claims alleging the issuance of false misbehavior reports as part of a "coverup" attempt. *See, e.g.*, *Cusamano*, 604 F.Supp.2d at 472; *Nelson v. Michalko*, 35 F.Supp.2d 289, 294 (W.D.N.Y. 1999); *James v. Coughlin*, 13 F.Supp.2d 403, 410 (W.D.N.Y. 1998).

I also note that plaintiff bases his claim against Cordway in part on Cordway's alleged placement of plaintiff in administrative keeplock, where he apparently remained for about nine days, prior to his being sentenced to SHU. *See* Complaint ¶¶ 9, 10. That relatively brief confinement, which is not alleged to have been unusually severe, does not implicate any protected liberty interest. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.), *cert. denied*, 525 U.S. 907 (1998); *Pettus v. McGinnis*, 533 F.Supp.2d 337, 341 (W.D.N.Y. 2008). Plaintiff's allegations thus provide no basis for a constitutional claim against defendant Cordway, and the due process claim against him is dismissed.


**B. Claim against Defendant Williams**

As stated, plaintiff alleges that C.O. Williams lied at the disciplinary hearing, with the intent of bolstering Cordway's testimony. He alleges, however, that Williams lied so egregiously "that his falsehoods ended up conflicting with Officer Cordway's testimony, to such an extent that it becomes clear to any thinking person that foul play is afoot." Complaint ¶ 20.

The principle that "a prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report ... extends as well to false testimony by corrections personnel at prison disciplinary hearings." *Thomas v. Calero*, No. 09 Civ. 5209, 2011 WL 1532058, at *6-*7 (S.D.N.Y. Mar. 17, 2011) (citing *Mitchell v. Senkowski*, 158 Fed.Appx. 346, 349 (2d Cir. 2005)), *Report and Recommendation adopted*, 2011 WL 1532061 (S.D.N.Y. Apr 20, 2011); *Phillips v.*

*Goord*, No. 08-CV-0957, 2009 WL 909593, at *6 (W.D.N.Y. April 1, 2009) ("a claim for the filing of a false report or of providing false testimony by a correctional officer witness at a disciplinary hearing, in and of itself, does not state a cognizable claim that plaintiff's due process rights were violated").

"The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in the proceeding, and then the claim is not based on the filing of a false report" or the giving of false testimony, but on the procedures employed at the hearing. *Phillips*, 2009 WL 909593, at *6. Here, plaintiff's allegations that he was denied due process at his hearing are addressed below in connection with his claims against the hearing officer, defendant Ferguson. But his bald assertion that Williams lied at the hearing–which in any event is not supported by any factual allegations and is utterly conclusory–does not state a claim against Williams.

### C. Claim against Defendant Ferguson

Defendant Ferguson conducted plaintiff's disciplinary hearing. In addition to the allegations that are outlined above, plaintiff alleges that Ferguson refused to provide plaintiff with documents relating to the testing of plaintiff's urine sample, that he refused to ask witnesses certain "vital" questions that had been requested by plaintiff, that he "continually rephrased questions" to the officer witnesses in a way that was designed to elicit answers that were detrimental to plaintiff's defense, and that he accepted the officers' testimony at face value, without any corroborating documentary support.

It is well established that while inmates do have some due process rights in connection with disciplinary proceedings, those rights are not as extensive as the rights of a defendant in a criminal trial. For example, to withstand constitutional scrutiny, prison disciplinary decisions must be supported only by "some evidence in the record," which is a relatively light evidentiary burden. *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).

In addition, "[p]rison hearing officers ... have the discretion to keep hearings within reasonable limits, and included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative." *Eleby v. Selsky*, 682 F.Supp.2d 289, 291–92 (W.D.N.Y. 2010) (citing *Russell v. Selsky*, 35 F.3d 55, 55–59 (2d Cir. 1994)).

At the same time, however, prison hearing officers' discretion in these matters is not completely unfettered. Thus, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify" or why requested evidence was excluded or denied. *Ponte v. Real*, 471 U.S. 491, 497 (1985). *See*, *e.g.*, *Loret v. Selsky*, 595 F.Supp.2d 231, 234 (W.D.N.Y. 2009) (denying hearing officer's motion for summary judgment where officer failed to explain basis for his conclusion that providing certain evidence to plaintiff would "jeopardize[] ... institutional goals and safety").

In the case at bar, it appears that Ferguson did deny plaintiff's requests for certain evidence, particularly concerning the urinalysis that led to the charges against him. While Ferguson may have had good reasons for that denial, the Court does not at this point have the benefit of a hearing transcript or other evidence upon which to make an assessment in that regard.

The Court is certainly mindful that plaintiff must do more than simply recite the elements of a claim in order to survive a motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Nevertheless, on a motion to dismiss under Rule 12(b)(6), the Court must accept plaintiff's factual allegations as true, and draw all reasonable inferences in his favor. *L-7 Designs, Inc. v. Old Navy, LLC*, ___ F.3d ___, 2011 WL 2135734, at *8 (2d Cir. 2011). In the case at bar, plaintiff has provided some factual detail in support of his claims, and accepting the truth of his allegations, I concluded that he has alleged enough to withstand Ferguson's motion to dismiss.

Plaintiff will, of course, retain the burden of establishing his claims, and it may well develop that on a more complete record, they will be subject to dismissal on a motion for summary judgment.

At this stage, however, plaintiff has alleged enough to proceed on his due process claim against Ferguson, and Ferguson's motion to dismiss that claim is denied.

## D. Claim against Defendant Fischer

The only allegation concerning Commissioner Fischer is that he initially modified the result of plaintiff's superintendent's hearing, and later reversed that result, after plaintiff had served his full sentence (as modified) of 180 days in SHU.  *See* Complaint ¶ 22.  In general, the mere fact that a supervisory official affirmed the result of a disciplinary hearing will not suffice to establish that official's personal involvement in an alleged constitutional violation, which is a prerequisite to liability under § 1983.  *See Eleby*, 682 F.Supp.2d at 293.

Courts within this circuit have held, however, that "while personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results." *Garcia v. Selsky*, 680 F.Supp.2d 479, 481 (W.D.N.Y. 2010) (quoting *Woodward v. Mullah*, No. 08-CV-463, 2009 WL 4730309, at *3 (W.D.N.Y. Dec. 7, 2009)) (additional internal quotes omitted).

It is not apparent from the complaint or the documents attached to it why Fischer (or someone within DOCS acting at his direction) initially modified but affirmed the disposition of the charges against plaintiff, but subsequently reversed that disposition, after plaintiff had served his full sentence.  The notices that plaintiff received, copies of which he has attached to the complaint, give no reason for the commissioner's decisions.  *See* Complaint Exs. A, B.  It does appear, however, that in his administrative appeal, plaintiff set forth at some length the bases for his appeal, including some of the same grounds underlying his present complaint.  *See* Complaint Ex. C.

As with plaintiff's claims against Ferguson, then, I conclude that plaintiff has alleged enough to go forward with his claim against Fischer, at least for purposes of a motion to dismiss under Rule 12(b)(6).  *See Garcia*, 680 F.Supp.2d at 481-82 (converting DOCS official's motion to dismiss to a motion for summary judgment, where plaintiff alleged that defendant had initially affirmed, but

subsequently reversed, hearing officer's decision, and stating that court would be better able to decide the question of defendant's personal involvement, as well as his liability, based on a fuller record).

## IV. Qualified Immunity

Defendants also move to dismiss the claims against them on the ground of qualified immunity.  That motion is denied.

"Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage."  *Charles v. New York State DOCS*, No. 07-CV-1274, 2009 WL 890548, at *10 (N.D.N.Y. Mar. 31, 2009) (citing *McKenna v. Wright*, 386 F.3d 432, 436-37 (2d Cir. 2004)).  "The defense must be based on facts appearing on the face of the complaint." *Id.*, 2009 WL 890548, at *10 (citing *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008)).  *See also Bernstein v. City of New York*, No. 06 Civ. 895, 2007 WL 1573910, at *9 (S.D.N.Y. 2007) ("[b]ecause the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss pursuant to [Rule] 12(b)(6)'") (quoting *Walker v. Mendoza*, No. 00 Civ. 93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)).

In the case at bar, whether Ferguson and Fischer can successfully assert the defense of qualified immunity depends to a great extent on the facts concerning what actions they took and why they took those actions, in light of the surrounding circumstances.  Their motion to dismiss on this ground is therefore denied as premature.  *See Rivera v. Fischer,* 655 F.Supp.2d 235, 239-40 (W.D.N.Y. 2009).

**CONCLUSION**

Defendants' motion to dismiss the complaint (Dkt. #4) is granted in part and denied in part. Plaintiff's Eighth Amendment claims are dismissed as to all defendants.  All of plaintiff's claims against defendants Cordway and Williams are dismissed.  In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 23, 2011.