UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————————————

JUNIOR COLLINS,

                                        Plaintiff,

                                                            DECISION AND ORDER

v.

                                                            Case No. 10-CV-6350-FPG

LIEUTENANT FERGUSON;
BRIAN FISCHER, Commissioner Department of Corrections,

                                        Defendants.

———————————————————————————————————

## I.     Introduction

*Pro se* Plaintiff Junior Collins ("Plaintiff"), a prisoner in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS"), formerly the

Department of Correctional Services ("DOCS"), commenced this action pursuant to 42 U.S.C. §

1983 by filing a Complaint on June 28, 2010, alleging violations of his civil rights in a number of

respects related to certain incidents which occurred in 2008 and 2009 at the Five Points

Correctional Facility ("Five Points") involving four defendants,[1] including Defendant Lieutenant

Ferguson ("Ferguson"), an employee of DOCS assigned to Five Points at the time of the relevant

events, and Defendant Brian Fischer ("Fischer"), Commissioner of DOCS.  ECF No. 1.

Presently, before the Court for determination is Defendants' Motion for Summary

Judgment ("Defs.' Mot."), consisting of a Notice of Motion (ECF No. 26), Rule 56 Statement

(ECF No. 26-2), Notice to Pro Se Litigant Opposing Motion for Summary Judgment (*"Pro Se*

———————————————————————————————————

[1] All Claims against Defendants Cordway and Williams, all claims against all named Defendants in their official
capacities, as well as Plaintiff's Eighth Amendment claims against all named Defendants, previously were dismissed
by Decision & Order of United States District Judge David G. Larimer dated June 23, 2011 (ECF No. 11) which
addressed Defendants' Motion to Dismiss (ECF No. 4).

Litigant's Notice," ECF No. 26-1), Memorandum of Law in Support of Summary Judgment ("Defs.' Mem.") (ECF No. 26-3), Declaration of Bernard F. Sheehan, Esq., Assistant Attorney General, including Exhibits 1-22 ("Sheehan Decl.") (ECF No. 26-4), and Declaration of Norman R. Bezio ("Bezio Decl.") (ECF No. 26-5), filed pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there exists no genuine dispute as to any material fact and asserting their entitlement to judgment as a matter of law. Fed. R. Civ. P. 56. Responding in opposition to Defendants' motion, Plaintiff filed a Notice of Declaration in Reply to Summary Judgment ("Pl.'s Resp.") (ECF No. 30), and accompanying Exhibits A through P (ECF No. 30-2 through 30-11). Defendants submitted their Defendants' Reply Memorandum in Support of Motion for Summary Judgment (Defs.' Reply") (ECF No. 31), and without objection, in further response/reply to the motion, Plaintiff submitted Petitioner's Traverse to Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment ("Pl.'s Traverse") (ECF No. 32).

For the reasons set forth herein below, Defendants' summary judgment motion is granted. The Complaint is hereby dismissed with prejudice.

## II.   Factual Background

On October 5, 2008, Plaintiff, an inmate at Five Points, received a misbehavior report charging him with violating institutional Rule 113.24 – Use of a Controlled Substance, after the presence of cannabinoids was positively detected twice through urinalysis testing. ECF Nos. 1, ¶ 9; 26-4, Ex. C; 30-4, Ex. C. A Tier III hearing was conducted by Hearing Officer Ferguson from October 14, 2008 to October 17, 2008 to determine the validity of this charge. ECF No. 1, ¶¶ 10, 18. During the hearing, Plaintiff called the DOCS employee who performed the urinalysis, Officer Cordway ("Cordway"), as a witness, and testified in his own behalf. ECF Nos. 26-4, Ex.

C; 30-4, Ex. C. Ferguson called as a witness Officer D. Williams ("Williams"), the regular bid urinalysis officer, to answer questions raised by Plaintiff. *Id.* At the conclusion of the hearing, Ferguson issued his decision and provided Plaintiff a written disposition finding him guilty of violating institutional Rule 113.24 and imposed a penalty of 12 months in the Special Housing Unit ("SHU"), 12 months loss of package, commissary and phone, and 24 months recommended loss of good time.[2] ECF Nos. 1, ¶ 10; 26-4, Ex. C; 30-4, Ex. C. Ferguson informed Plaintiff that he based his decision on the written report and testimony of Cordway, the testimony of Williams regarding urinalysis procedures, proficiency completion, review of the urinalysis testing documentation, and consideration of Plaintiff's objections and requests addressed to the documentation. *Id.*

On December 18, 2008, Plaintiff was notified that the SHU confinement of 12 months was modified to six months. ECF Nos. 1, ¶ 11; 26-4, Ex. C; 30-2, Ex. B. Plaintiff appealed the modified disposition through an Article 78 proceeding in New York State Court.[3] ECF No. 1, ¶ 17. Subsequently, on October 15, 2009, Plaintiff was notified regarding the administrative reversal of the superintendent's hearing of October 17, 2008. *Id.* This civil action ensued.

## III.   Discussion

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[2] The Complaint states that Ferguson imposed 12 months loss of good time. ECF No. 1, ¶ 10.

[3] Plaintiff submitted a copy of a letter sent on October 16, 2009 by Assistant Solicitor General Mastracco to Hon. Michael J. Novak, Clerk of the Court, Appellate Division, Third Department, stating that no responding brief would be submitted; the determination at issue had been administratively reversed, and all references to the determination had been expunged; and further requesting that the CPLR article 78 proceeding be dismissed as moot. ECF No. 30-11, Ex. O. By Memorandum and Judgment entered on September 28, 2006, on the ground that "petitioner has received all the relief to which he is entitled," the Appellate Division, Third Department dismissed the matter as moot. *Id.*

and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" if it might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Summary judgment is appropriate "[w]here the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250.

The Second Circuit has offered guidance in determining the existence of genuine issues of material fact, stating: "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Duse v. International Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) (citing, *e.g., Anderson*, 477 U.S. at 255); *see Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) ("The inferences are to be drawn from the underlying facts revealed in the materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."). Although the district court must view the evidence in favor of the nonmoving party, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 252) (internal alterations and emphasis omitted). Reliance

by the nonmoving party on "conclusory allegations or unsubstantiated speculation" is insufficient to defeat a motion for summary judgment. *Id.* at 554 (quoting *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

Where, as in the present circumstances, the party opposing summary judgment is *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Morrison v. Parmele*, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (quoting *Corcoran v. New York Power Authority,* 202 F.3d 530, 536 (2d Cir. 1999)). This liberalized approach to *pro se* pleadings notwithstanding, "proceeding *pro se* does not otherwise relieve [opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-Civ.-8594 (LAP), 2003 WL 102853, at *5, 2002 U.S. Dist. LEXIS 25166, at *5 (S.D.N.Y. Jan. 9, 2003); *see also Stinson v. Sheriff's Dept. of Sullivan County*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the "liberal construction" accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

## B. 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, civil liability is imposed upon any person who, under color of state law, subjects an individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 137 (2d Cir. 1999). The statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Section 1983, by its terms, is not "a source of substantive rights, but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Here, Plaintiff has alleged violations of his constitutional rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution which provides that, "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.  "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996)).

## C. Due Process Allegations Against Defendant Ferguson

Defendant Ferguson conducted the Tier III disciplinary hearing held to challenge the misbehavior report based on the positive urinalysis results.  Plaintiff has alleged as the constitutional basis for his § 1983 action against Ferguson the denial of due process in the conduct of the disciplinary hearing, complaining that Ferguson was biased and partial during the disciplinary hearing, denying him the right to assistance and the right to fully cross-examine the adverse witness, and placing Plaintiff in administrative keeplock and the SHU.  ECF No. 1, ¶ 13.  Specifically, Plaintiff alleged that he was denied assistance and his "rights to a fair and impartial hearing by a neutral and detached hearing body" were violated when Ferguson: (1) did not provide, or partially provided, the remaining documents he requested from assistance; (2) did not answer questions Plaintiff posed, which answers would have helped his defense; (3) would not allow testifying officers to answer certain vital questions which would have benefitted his defense; (4) rephrased Plaintiff's questions to elicit responses that hurt Plaintiff's defense; and

(5) dismissed Plaintiff's documentary evidence and relied on the officers' contradictory testimony. *Id.* ¶ 21.

Regarding a state prison disciplinary hearing which results in the imposition of punitive confinement, the Supreme Court has held that due process affords certain procedural safeguards, including, that the inmate be given at least 24 hours advance written notice of the disciplinary charges against him; be permitted to call witnesses and present documentary evidence, subject to institutional safety or correctional goals; be judged by a fair and impartial hearing officer; and be provided a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action taken. *See Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974). These procedures "represent a reasonable accommodation between the interests of the inmates and the needs of the institution." *Id.* at 572.

An inmate's due process right to call witnesses and present documentary evidence in his defense at a disciplinary hearing is not absolute. *Id.* at 566-67 (discussing the view, in this regard, that prison officials "must have the necessary discretion without being subject to unduly crippling constitutional impediments"). The exercise of the right to call witnesses and present documentary evidence must not be "unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Additionally, confrontation and cross-examination are generally not required in the context of disciplinary hearings. *Id.* at 568 ("We think that the Constitution should not be read to impose the procedure ... adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination.").

Impartiality of the disciplinary hearing officer is a procedural safeguard to which an inmate is entitled. *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) ("An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer."). However, "the degree of

impartiality required of prison hearing officers does not rise to the level required of judges generally." *Black v. Selsky*, 15 F. Supp. 2d 311, 317 (W.D.N.Y. 1998) (citing *Francis v. Coughlin*, 891 F.3d 43, 46 (2d Cir. 1989) (citing *Cleavinger v. Saxner*, 474 U.S. 193 (1985)). The *Wolff* standard of due process requires only that the prison hearing officer not be so insufficiently impartial as to present a "hazard of arbitrary decisionmaking." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. at 571). Thus, "it is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined" violates the right of due process. *Francis v. Coughlin*, 891 F.3d at 46.

Additionally, the Supreme Court in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985), held that the hearing disposition arrived at must be supported by "some evidence" in the record – meaning, whether the record contains any evidence that could support the conclusion reached by the hearing officer. *Id.* at 455-456. This "some evidence" standard is "extremely tolerant" and is a relatively light evidentiary burden; however, "only 'reliable' evidence can constitute 'some evidence.'" *Sira v. Morton*, 380 F.3d 57, 76-77 (2d Cir. 2004) (citing *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. at 454; *see Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).

Viewed favorably, the certified transcript of the disciplinary hearing (ECF Nos. 26-4, EX. C; 30-4, Ex. C), reveals that Plaintiff was not denied the right to be judged by a fair and impartial hearing officer, nor was the hearing result arbitrarily and adversely predetermined. At the start of the disciplinary hearing, Ferguson informed Plaintiff of the charge against him, and Plaintiff entered a not guilty plea. Ferguson also informed Plaintiff of his right to have witnesses called on his behalf, to present documentary evidence, and to make objections for the hearing officer's consideration and response. Ferguson also informed Plaintiff regarding the questioning of

witnesses, indicating that Plaintiff needed to ask questions of him and he would direct the questions, if relevant, to the witness. Before any questioning commenced, Plaintiff acknowledged that prior to the hearing he received copies of documentation consisting of the misbehavior report, the request for urinalysis, the urinalysis procedure form, Appendix C and directive 4937, the result card, and the medical certification. He also acknowledged that prior to the hearing, he received assistance from "Teacher Struck."

During the hearing, Cordway, the only witness called by Plaintiff, testified that he tested Plaintiff's urine twice, with positive results both times for cannabinoids or marijuana. Cordway testified that a new machine was used to perform the urinalysis testing; this machine did not use or produce the forms and negative and high calibration numbers about which Plaintiff inquired, and used different controls than the old system; the machine figured out the cutoff calibration of .298 or higher for cannabinoids; the last calibration occurred on 10/4/08; this machine also performed its own calibrations and ran the controls every two weeks, keeping everything stored in the computer; the controls are used for every test; and the new machine only tested for what's positive, in this case THC, and the numbers were not going to be the same for each test, i.e., .315 Plaintiff's first test and .305 Plaintiff's second test, but the numbers for opiates and cocaine were the same for both tests because Plaintiff was not tested for these. The transcript also reveals that Plaintiff asked some questions of Cordway, and Ferguson posed some of Plaintiff's questions to Cordway regarding the test results and the calibration of the urinalysis machine. Although Ferguson occasionally rephrased Plaintiff's statements into questions, or clarified the questions Plaintiff posed to this witness, particularly about information on the forms utilized by the old system, but not printed by the new machine, Plaintiff's opportunity to question this witness was not unconstitutionally curtailed so as to amount to a denial of due process.

Upon the completion of this witness' testimony, Plaintiff objected to the assistance he had been provided and listed his objections to the entire hearing.  He stated that he had not been given the following requested items, which he stated were required by the rules and regulations set forth in 7 N.Y.C.R.R. § 1020 *et seq.*, and directive 4937, consisting of: quarterly proficiency reports to determine the accuracy of the operator's results, though his assistant told him "we passed"; daily work sheet form, which his assistant said didn't exist with the new machine; new rules and procedures regarding the new machines; form summarizing all the tests performed on the date of his testing for cross-checking the results to strengthen his defense; an interview with the witness beforehand, though his assistant said Plaintiff requested the witness to testify at the hearing; calibration history for his tests to confirm that his tests were not done in accordance with the drug testing system, but his assistant said it was missing and did not exist and, instead, provided him the statement regarding the testing apparatus; the negative calibration controls and high calibration controls that were omitted from the urinalysis procedure forms provided to him. Plaintiff, again, inquired about the differences in the first and second test results, respectively, .315 and .305, using the same calibration cutoff of .298, and asked why Cordway did not recalibrate the machine before the second test, stating that the machine was required to be calibrated daily, after every test, and not every two weeks.  Plaintiff stated that of his seven requests, he received only a copy of the statement of the scientific principles and validity of the testing apparatus from the assistant.

Ferguson agreed to secure the information Plaintiff requested to respond to these objections, and adjourned the hearing to get the documentation and testimony to address Plaintiff's questions.  At the continued hearing, Ferguson called Williams, the regular bid

urinalysis officer, for this purpose and for his expertise.  Prior to Williams testifying, Ferguson also informed Plaintiff that he, too, could ask questions of this witness.

Responding to Ferguson's queries regarding Plaintiff's list of objections, one at a time, Williams testified that: with the new system, the actual daily log form no longer existed; pursuant to the revised directive 4937 of October 2006, which specified exactly what was to be given to an inmate for the hearing on a urinalysis misbehavior report, i.e., a copy of the misbehavior report—request for urinalysis—urinalysis procedure form—printed results produced by the urinalysis testing apparatus for positive tests—a statement of principles and validity of the testing apparatus, otherwise known as Appendix C, the daily log form's replacement was not among the items to be given to him; calibration of the new machine occurred every two weeks and last occurred on 10/4/08, the day before Plaintiff's urinalysis test, and controls were run on the day of the actual test; the numbers, negative or high calibration controls, are recorded and kept for DOCS records, but per directive 4937, are not part of the packet given to the inmate; it is only required that the inmate know the calibration cutoff, which for THC is .298; the .298 median calibration cutoff value was within the guidelines of .003 of the high .301 and the low of .295.  Plaintiff questioned Williams regarding his responses to these objections based on a copy of directive 4937 that Plaintiff brought with him to the hearing.

During Williams' testimony, Ferguson showed, but did not give to Plaintiff, a copy of the daily work list of 10/5/08 which reflected Plaintiff's name and redacted information regarding other prisoners; showed, but did not give to Plaintiff, a copy of the quarterly proficiency report of American Association of Bioanalysts Proficiency Testing Service conducted on 9-17-2008 and stated "This says 2008 we passed"; explained that directive 4937 is a positive directive specifying what he could get; took the time to clarify, despite Plaintiff's protests to the contrary,

that Plaintiff had signed for a copy of the revised directive 4937, Appendix C, but at the hearing was reading from the older outdated version of 11/2/98[4] which was not given to inmates; and declined to pose repetitive questions to Williams based on the outdated directive 4937, questions which the witness had already answered based on the revised directive 4937—answers with which Plaintiff continued to express his dissatisfaction.  Following the completion of Williams' testimony, Ferguson heard Plaintiff's additional objections; showed him a copy of the certification of Cordway's 16-hour training program to perform urinalysis testing, and his passing grade; and took further testimony from Plaintiff regarding his dissatisfaction with the information he was provided regarding the calibration of the new machine.

Plaintiff did acknowledge during the disciplinary hearing that the assistant provided him written reasons for not complying with six of his seven requests, including that some documentation no longer existed with use of the new machine and that some of the requested documentation and testimony would be provided to Plaintiff at the hearing.  (ECF 30-4, Ex. C). Even assuming the assistant failed to comply with all of Plaintiff's requests, the record discloses no indication of prejudice which adversely influenced the outcome of the hearing.  *See Hernandez v. Selsky*, 572 F. Supp. 2d 446 (S.D.N.Y. 2008).  Especially, where, as can be readily seen from a review of the disciplinary hearing proceedings, Ferguson carefully noted each of

---

[4] Notwithstanding his signature, Plaintiff insisted that he received the outdated version of directive 4937 from the correction officer who gave him the misbehavior ticket on October 5, 2008.  Interestingly, Plaintiff submitted as an accompanying exhibit to his response a copy of a 10-page memorandum titled "Challenging a Positive Urinalysis Test Prepared by Prisoners' Legal Services of New York" and dated 4/2001, which references the inclusion of a copy of "Directive #4937" and discusses the rules and regulations governing urinalysis testing procedures and documentation in use for EMIT, the drug testing system produced by the Syva Corporation and used by DOCS in 2001.  ECF No. 30-5, Ex. D.  Particularly noteworthy is the striking resemblance between the requests Plaintiff made of his assistant, the questions he asked, and the objections he raised during the disciplinary hearing, in relation to the urinalysis testing procedures and documentation specified in the memorandum prepared by Prisoners' Legal Services of New York.  For example, the requirements of recalibration before the second test, recording of the positive urine results on the Daily Log Form, as well as the recommended request of a list of medications which cause false positives, and cross checking the Daily Log information with the Request for Urinalysis and the Urinalysis Procedure Form to see how often a positive EMIT test is confirmed by a second EMIT test.  ECF No. 30-5, Ex. D.

Plaintiff's objections regarding assistance and sought to obtain responses to these objections either in the form of the testimony of Williams, or by obtaining copies of the requested documentation to *show* to Plaintiff. Rather than demonstrating any bias or partiality, this record demonstrates that by taking such steps, Ferguson affirmatively provided Plaintiff access to the requested documentation, albeit true that these steps did not satisfy Plaintiff's consistently oft-stated desire to be *given* these documents so that he could review them. The judgment exercised by Ferguson in the manner described should not lightly be cast aside. *See generally Wolff v. McDonnell*, 418 U.S. at 566 ("[The Court] should not be too ready to exercise oversight and put aside the judgment of prison administrators.").

Moreover, although Plaintiff testified during the hearing that he needed to be given certain documentation to enable him to demonstrate that the urinalysis test was inaccurate, or Cordway incorrectly conducted the test and failed to follow the applicable calibration rules, or for purposes of cross-checking for reliability, the information he sought, by the rules and regulations governing urinalysis misbehavior reports, was not part of the inmate disciplinary hearing package, and he was not entitled to be given it. In any event, to the extent that Plaintiff has argued only that Cordway violated New York state rules and regulations and/or either version of DOCS directive 4937 by failing to follow the procedures or provide him the documentation specified therein, and Ferguson exacerbated these violation by only partially acceding to his requests, such claims are not cognizable under § 1983. *O'Diah v. Neth*, 6:10-CV-6592 (MAT), 2013 WL 6440610, at *3 (W.D.N.Y. Dec. 9, 2013) (citing *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) ("A violation of a state law or regulation, in and of itself does not give rise to liability under 42 USC § 1983."). Nor is a violation of a DOCS directive, standing alone, a violation of any New York state law, statute, or regulation. *Id.* (citing

*Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002); *see also Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (holding that state prison directives do not create liberty interests protected by the Due Process Clause). "This is because DOCCS Directives are 'merely a system the Commissioner has established to assist in exercising his discretion,' which the Commissioner retains, despite any violation of these directives."). *O'Diah v. Neth*, 6:10-CV-6592 (MAT), 2013 WL 6440610, at *3 (W.D.N.Y. Dec. 9, 2013) (citing *Farinaro v. Coughlin*, 642 F. Supp. 276, 280 (S.D.N.Y. 1986).

Furthermore, nothing in Defendant Ferguson's Responses to the Plaintiff's Interrogatories (ECF No. 30-8, Ex. H), or in Defendant Ferguson's Response to Plaintiff's Request for Admissions (ECF No. 30-10, Ex. J), or Plaintiff's own deposition (ECF No. 30-3, Ex. B), alters my view that the hearing was conducted impartially, fairly, and in accordance with the *Wolff* standard.  In his responses to Plaintiff's interrogatories and requests for admissions, Ferguson recounted the procedures utilized and the measures he took to obtain information for Plaintiff during the disciplinary hearing, and denied violating any procedural safeguards. Significantly, during his deposition, Plaintiff's testimony tracked the objections raised during the hearing, but he could not recall what vital questions Ferguson did not allow the witnesses to answer, and could only state that his Complaint detailed how the provision of this information would have helped the presentation of his defense during the hearing.  Viewing the Complaint and the attachments favorably, however, omitted is any mention of the manner in which such information would have aided or been beneficial to Plaintiff in the defense of the charge.

Finally, "some evidence" in the record supported Ferguson's findings.  Two positive test results for marijuana constituted sufficient evidence of guilt of drug use to support Ferguson's findings, and any claimed improprieties or irregularities in the urinalysis procedure and

documentation did not render the results of such testing inadmissible at the disciplinary hearing. *Rivera v. Wohlrab*, 232 F. Supp. 2d at 123-124. There was no evidence to suggest that the procedures used to obtain the urinalysis results were flawed or faulty, Plaintiff's protests to the contrary notwithstanding. Therefore, Ferguson was entitled to discount Plaintiff's defense and, instead, rely on the urinalysis results and the testimony of Cordway and Williams in arriving at his disposition.

### D. Due Process Allegations Against Defendant Fischer

Plaintiff's sole allegation against Fischer is that, after being informed of the due process violations through Plaintiff's administrative appeal, rather than reversing Ferguson's alleged erroneous determination, Fischer initially modified the result of Plaintiff's superintendent's hearing, and later, reversed that result, after Plaintiff had served his full sentence of 180 days in SHU. ECF No. 1, ¶ 22. Thereby, he states, Fisher "failed to remedy the wrong." *Id.* Defendants contend that Fischer cannot be found to be personally liable in this case and is entitled to summary judgment because he was not personally involved in any constitutional violation.

Personal involvement is a prerequisite for the assessment of damages in a § 1983 action against a supervisory official in his individual capacity. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 496, 501 (2d Cir. 1994). Personal involvement of a supervisory defendant may be demonstrated by evidence that the defendant: (1) directly participated in the alleged violation; (2) failed to remedy the wrong after being informed of the violation through a report or an appeal; (3) created a policy or custom under which unconstitutional practices occurred or were permitted to continue; (4) was grossly negligent in supervising the subordinates who committed wrongful acts; or (5) exhibited deliberate

indifference to inmates' rights by failing to act on information indicating that unconstitutional acts were occurring.[5]  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986).  Under the *Colon* analysis, "The mere fact of supervisory authority, however, is insufficient to demonstrate liability, based on a failure to supervise, under § 1983."  *Ramsey v. Goord*, 661 F. Supp. 2d 370, 385 (W.D.N.Y. 2009) (citing *Colon*, 58 F.3d at 874).

Even viewing his allegations favorably under an analysis of the *Colon* criteria, and resolving all ambiguities and drawing all factual inferences in his favor, Plaintiff has failed to establish evidence on which the jury could reasonably find for him on the issue of Fischer's personal involvement in the alleged deprivation of his rights.  In this regard, nothing in the record demonstrates that Fischer ever saw Plaintiff's administrative appeal or directly participated in conducting the administrative reviews which resulted in the initial modification of Ferguson's decision or the later reversal.  Here, Defendants have submitted undisputed evidence in the form of the Declaration of nonparty Norman R. Bezio ("Bezio"), now retired, former DOCS Director of Special Housing and Inmate Discipline, who states that on December 18, 2008, he, and not Fischer, upheld the October 17, 2008 decision rendered by Ferguson, but modified the imposed sentence; he also signed the December 18, 2008 Review of Superintendent's Hearing.  ECF No. 26-5, ¶¶ 6-7.  Bezio further states in his Declaration that on

---

[5] *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), cited all five factors set out in *Colon v. Coughlin* and, further, referenced the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), indicating that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain violations."  The Second Circuit was not presented with proper facts in *Grullon* to rule on *Iqbal*'s significance and has not explicitly recognized the split among the district courts over whether all five of the *Colon* factors are still applicable.  *See Liner v. Fischer*, No. 11 Civ. 6711 (PAC)(JLC), 2013 WL 3168660, at *7+(S.D.N.Y. June 24, 2013) (summarizing the state of the law in this Circuit regarding how many of the *Colon* factors survive in the wake of *Iqbal*, and agreeing with the "majority view" that where the constitutional claim does not require a showing of discriminatory intent, the personal-involvement analysis in *Colon* should still apply); *see also Wik v. Kunego*, No. 11-CV-6205-CJS, 2012 WL 4801038, at *3, n.3 (W.D.N.Y. Oct. 9, 2012); *Stresing v. Agostinoni*, No. 11-CV-967S, 2012 WL 2405240, at *4 (W.D.N.Y. June 25, 2012).

October 15, 2009, he administratively reversed the October 17, 2008 decision and signed the October 15, 2009 Review of Superintendent's Hearing. *Id.* ¶¶ 9-10. A review of these documents discloses as much. ECF Nos. 26-4, Ex. C; 30-4, Ex. B.

Attempting to counter this evidence, Plaintiff states in his response and reply submissions opposing summary judgment, that the due process claims against Fischer should not be dismissed on the ground of the lack of personal involvement first, because Plaintiff addressed his administrative appeal directly to Fischer who in turn directed his "subordinate Norman Bezio" to both modify and then reverse Ferguson's unlawful determination; and second, because Bezio acted on behalf of Commissioner Fischer, an indication that he "was acting under the Commissioner's orders or directions." ECF Nos. 30; 32, ¶¶ 22-24. The general rule is that if a supervisory "official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)). Plaintiff has presented no evidence establishing that Fischer personally looked into any issues in Plaintiff's letters or otherwise acted on Plaintiff's requests. Therefore, in addition to further highlighting Plaintiff's improper reliance on Fischer's supervisory status as the sole evidence of his personal involvement, these statements are merely conclusory and speculative and, as such, do not create an issue of material fact for trial such that a reasonable and rational trier of fact could find in Plaintiff's favor.

Some discussion of Bezio's modification and ultimate reversal of Ferguson's determination is appropriate at this juncture. Plaintiff, himself, has acknowledged that his review of the documents in this case fails to disclose any apparent reasons why Ferguson's determination was initially modified, then, fully reversed after Plaintiff had served his full

sentence. ECF No. 30, ¶ 41. Indeed, upon this Court's review, the record is silent regarding the specific reasons underlying either the modification or the reversal. Although in appealing the initial modification, Plaintiff provided numerous reasons which he believed warranted reversal, this Court would be engaging in sheer and unwarranted speculation if it were to single out which one or more of Plaintiff's stated reasons drove Bezio's administrative decisions respecting Ferguson's determination. Nor would the Court be justified in advancing any guesses regarding the nature and content of the discussion Bezio may have had with the Office of the Attorney General before reversing and expunging the determination. *See* ECF. No. 30-11, Ex. L. Under these circumstances, standing alone, the mere modification and later reversal of Ferguson's determination creates no genuine issue of material fact for trial.

### E. Qualified Immunity

Finally, Defendants Ferguson and Fischer assert their entitlement to qualified immunity. Summary judgment may be granted on this ground if a defendant can demonstrate that the asserted right was not clearly established at the time of the alleged incident, or that it was nonetheless objectively reasonable for the official to believe that his conduct did not violate the asserted right. *Barnes v. Henderson*, 628 F. Supp. 2d 407, 412 (2009) (citing *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995)). This doctrine protects officials not just from liability, but also from suit on such claims. *See X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999).

Using the traditional analytical framework, if the facts, viewed most favorably to the plaintiff do not establish a constitutional violation, the plaintiff, having suffered no wrong cognizable under § 1983, may not recover. *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Where the facts do establish a constitutional

violation, and upon proceeding to the second inquiry, it is clear that "a reasonable officer could have believed that the challenged conduct was lawful at the time of the violation, then qualified immunity bars the claim." *Id.* (internal citations and quotations omitted). Subsequently, citing the need for flexibility when adjudicating qualified immunity cases, the Supreme Court provided additional guidance, stating: "Because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case. *Pearson v. Callahan*, 555 U.S. 223, 235 (2009). Thus, it is appropriate for district courts to use their sound discretion in determining the sequence of this two-step protocol in light of the particular circumstances of the case under consideration.

As stated herein above, I found that no due process violation occurred in the conduct of the disciplinary hearing. Even if I were to proceed to the second *Saucier* step, I would find that both Ferguson and Fischer, assuming for the sake of argument personal involvement on Fischer's part, should be shielded from liability for damages resulting from the performance of discretionary official functions since their conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. (*Turner v. Grant*, No. 98-CV-706A, 2000 WL 362032, at*6 (W.D.N.Y. Mar. 29, 2000)) (quoting *Ayers v. Ryan*, 152 F.3d 77, 82 (2d Cir. 1998)).

Clearly, pursuant to the *Wolff* standard, an inmate's due process rights to an impartial and unbiased hearing officer, to call witnesses, and to present documentary evidence in his defense were well established at the time the disciplinary hearing took place. It was also established that a hearing officer, in the exercise of his discretion, could limit the inmate's right to question witnesses and could appropriately deny his requests for information on various grounds. Here, in

the exercise of his discretion, for the reasons stated, it was objectively reasonable for Ferguson to believe that denying Plaintiff's requests based on an outdated prison directive did not violate the rights to which he was entitled in the hearing process, and to find that there was sufficient documentary evidence and witness testimony to sustain the charge in the misbehavior report.

As to Fischer, there was no clearly established constitutional right to have the Commissioner of DOCS personally review and investigate an inmate's appeal allegations regarding the conduct of urinalysis testing or the conduct of a disciplinary hearing held to determine the validity of a misbehavior report based on the urinalysis test results.   Even assuming Fischer's personal involvement, he was entitled to conclude that the conduct of the disciplinary hearing was objectively reasonable and did not violate Plaintiff's due process rights.

The claims against Ferguson and Fischer should be dismissed.

## IV.   CONCLUSION

The Motion for Summary Judgment filed by Defendants Ferguson and Fischer on October 11, 2013 (ECF No. 26) is hereby GRANTED.   The Complaint is dismissed with prejudice.   The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: March 9, 2015
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT